# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4252-16T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JOSE D. LOPEZ-DURANGO,
a/k/a JOSE D. DURANGO,
LOSE D. DURANGO, and
JOSE D. LOPEZ,

      Defendant-Appellant.

_____

      Submitted October 3, 2018 — Decided October 15, 2018

      Before Judges Koblitz and Ostrer.

      On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-06-0557.

      Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

      Gubir S. Grewal, Attorney General, attorney for respondent (Arielle E. Katz, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant priest Jose D. Lopez-Durango appeals from his conviction after trial of second-degree luring, N.J.S.A. 2C:13-6, third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), for which he was sentenced to an aggregate term of six years in prison, parole supervision for life, and all additional mandatory penalties. He was acquitted of second-degree attempted sexual assault, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(c)(4). He argues for the first time on appeal that the court should have cautioned the jury regarding its use of fresh complaint testimony. Having determined that, in light of the defense strategy, the jury charge was not clearly capable of producing an unjust result, we affirm.

The victim, S.M.,[1] testified that she lived across the street from her family's church and developed a close relationship with defendant, one of the three priests at that church. She said she began texting him when she was fourteen years old. On one occasion, he hugged her in a way that made her uncomfortable in a back room of the church. On January 20, 2013, she went to speak with him in the church and he led her into the living quarters, into a room with a couch. Defendant then put his arm around her and kissed her cheek, put

_____

[1] We use initials to preserve the confidentiality of the child victim. R. 1:38-3(c)(9), (12).

his hand under her shirt and rubbed her belly, and moved S.M. onto his lap. He locked his legs around hers, put his hand under her shirt, rubbed her back and "grind[ed]" on her by opening and closing his legs. When defendant tried to flip her over, he fell and she told defendant to stop. Defendant stopped, apologized and asked S.M. if she "liked it." S.M. said no and left.

That same day, S.M. told her cousin, the church maintenance man and her uncle what happened. She did not tell her mother until later. Her uncle confronted defendant with S.M. and told defendant to apologize.

S.M. continued to text defendant, but shortly before her fifteenth birthday celebration, or "quinceañera," she asked another priest, Father Edgar, not to let defendant perform the celebratory mass. She told Father Edgar about the incident, but asked that the police not become involved. Father Edgar confronted defendant who admitted S.M. had been in his room.

Church authorities notified the Prosecutors Office, which called defendant in to discuss the allegation. Defendant then spoke to S.M.'s mother, admitting he "went too far" and had kissed and hugged her daughter while she was sitting on his lap.

Without defense objection, the State called Father Edgar and S.M.'s mother to testify that S.M. reported the incident to them. Without objection,

both testified in detail about what S.M. told them and both were cross-examined extensively on S.M.'s report to them. Defense counsel also called as a witness and examined the maintenance worker about S.M.'s report to him of the incident when it occurred. Defense counsel brought out that when the maintenance man spoke to S.M. about the incident, he concluded that defendant had not physically touched S.M. inappropriately.

In summation, defense counsel dwelled on the fact that S.M. elaborated on the incident in her trial testimony, beyond what she had told the witnesses closer in time. He emphasized that the child did not use the word "grind" in relationship to defendant's actions until her testimony in court. Counsel argued that while defendant should not have taken S.M. into the living quarters of the church, defendant did not lure S.M. or attempt to sexually assault S.M., as he was charged.

On appeal, defendant raises the following issue as plain error:

> I. THE COURT ERRED BY FAILING TO INSTRUCT JURORS NOT TO USE GRAPHIC TESTIMONY ABOUT AN OUT-OF-COURT COMPLAINT AS PROOF THAT THE COMPLAINT WAS TRUE. U.S. CONST., AMENDS. V, XIV; N.J. CONST., ART. I, PARS. 1. 9. 10.

As an uncodified hearsay exception, the fresh-complaint rule allows the State to introduce a sexual victim's out-of-court revelation of such conduct to a

confidante shortly after the conduct occurs. The fresh-complaint testimony negates a defense inference that the alleged offense must have been contrived because the victim did not promptly tell anyone about it. See State v. J.A., 398 N.J. Super. 511, 517 (App. Div. 2008); State v. Hill, 121 N.J. 150, 163 (1990).

"A witness may testify only to the general nature of the complaint, and unnecessary details of what happened should not be repeated." State v. W.B., 205 N.J. 588, 617 (2011). Additionally, defendant is ordinarily entitled to a jury charge cautioning the jury as to the use of fresh complaint evidence. See State v. Mauti, 448 N.J. Super. 275, 318 (App. Div. 2017).

Adequate and understandable jury instructions are "[a]n essential ingredient of a fair trial." State v. Afanador, 151 N.J. 41, 54 (1997). It has long been recognized that the "charge is a road map to guide the jury and without an appropriate charge a jury can take a wrong turn in its deliberations." State v. Gartland, 149 N.J. 456, 475 (1997) (quoting State v. Martin, 119 N.J. 2, 15 (1990)). A defendant is required to challenge the jury instructions by objecting before the jury retires so that the trial court may cure any defect in the charge. R. 1:7-2.

Where, as here, there is a failure to object, we will reverse only if we find plain error. R. 2:10-2. Plain error in the context of a jury charge is "[l]egal

impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Afanador, 151 N.J. at 54 (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). Generally, "[e]rroneous instructions are poor candidates for rehabilitation . . . and are ordinarily presumed to be reversible error." Ibid.

The model jury fresh complaint charge states, with the footnotes deleted:

> In this case, you heard testimony that sometime after the alleged sexual offense, _____(name)_____ complained to _____ about what had taken place. More particularly, there was testimony that... (The court should specify for the jury the particular testimony to which the fresh complaint rule applies.)
>
> The law recognizes that people might assume that anyone subjected to a sexual offense would complain within a reasonable time to someone whom (he/she) would ordinarily turn for sympathy, protection or advice. If there was no evidence that _____(name)_____ _____ made such a complaint, some might conclude that no sexual offense occurred.
>
> As a result, in cases involving an allegation of a sexual offense, the State is permitted to introduce evidence of the complaint. The only reason that the evidence is permitted is to negate the inference that _____(name)_____ failed to confide in anyone about the sexual offense. In other words, the narrow purpose of the fresh-complaint rule is to allow the State to introduce such evidence to negate any inference that _____(name)_____ failed to tell anyone about the

6

sexual offense, and that, therefore, (his/her) later assertion could not be believed.

A fresh-complaint is not evidence that the sexual offense actually occurred, or that ____(name)____ is credible. It merely serves to negate any inference that because of (his/her) assumed silence, the offense did not occur. It does not strengthen (his/her) credibility. It does not prove the underlying truth of the sexual offense. A fresh-complaint only dispels any negative inference that might be made from (his/her) assumed silence.

In determining whether a complaint was in fact made, you may consider all the relevant factors in evidence. You may consider your observations of the age and demeanor of ___(name),___ your evaluation of (his/her) background, including (his/her) relationship, if any, with the defendant and the nature of (his/her) relationship with _____ (the person to whom the complaint was made). In this context, you may consider the timeliness of the complaint and the likelihood that _____(name)_____ would complain under the circumstances described. If there was a delay in making the complaint, you may consider whether any circumstances existed which would explain the delay. You may consider the conduct and demeanor of ____(name)____ at the time of the complaint as well as (his/her) physical or mental condition (including any evidence of physical injury).

You may also consider whether the complaint was volunteered by _____(name)_____ or whether it was the result of interrogation. If you find that ___(name)___ made the complaint after being questioned, you may consider what prompted the questioning, whether the questions were in response to some conduct, emotional or physical condition, statement or pattern of behavior of ___(name)___ _____, or whether they were initiated by the questioner without any provocation. You may also consider the

7

A-4252-16T1

nature and extent of the questions themselves and any motive on the part of the person who asked them in determining whether the complaint was truly that of __ _____(name)_____ or was the product of suggestion by others.

It is, of course, up to you to determine what the facts are with regard to the circumstances of the complaint and what weight to give to these facts in determining whether or not a complaint was made.

As I have indicated earlier, this testimony was permitted for a limited purpose. The making of a complaint is not an element of the offense. Proof that a complaint was made is neither proof that the sexual offense occurred nor proof that ____(name)____ was truthful. It merely dispels any negative inference that might arise from (his/her) assumed silence. It eliminates any negative inference that (his/her) claims of having been sexually assaulted are false because of (his/her) assumed failure to have confided in anyone about the sexual offense.

[Model Jury Charges (Criminal), "Fresh Complaint" (rev. Feb. 5, 2007).]

Defense counsel did not request this charge, nor object when it was not given by the court. The charge would have undercut defense counsel's strategy.

In this unusual factual scenario, where defense counsel emphasized the victim's complaints to others as evidence of her lack of credibility and dwelled on the precise wording and details of her fresh complaints, the failure to caution the jury about the limited use of fresh complaint evidence does not constitute plain error. Rather, defendant urged the jury to use the fresh complaint evidence

8

for purposes well beyond an explanation of the delay in contacting authorities. Defense counsel asked the jury to consider S.M.'s prior versions of what happened to discredit her trial testimony. The fresh complaint evidence was in effect used by the defense as an exceptions to the hearsay rule, under N.J.R.E. 803(a)(1), as prior contradictory statements of the victim. This use of the fresh complaint testimony explains why counsel did not ask for a limiting instruction. The jury may well have accepted this defense argument, as it acquitted defendant of the serious attempted sexual assault charge.

In this context the failure to give the model fresh complaint charge was defense strategy and does not constitute plain error. "[W]hen a defendant later claims that a trial court was mistaken for allowing him to pursue a chosen strategy—a strategy not unreasonable on its face but one that did not result in a favorable outcome—his claim may be barred by the invited-error doctrine." State v. Williams, 219 N.J. 89, 100 (2014). While defense counsel did not request that the fresh complaint charge be omitted, his elicitation of other fresh complaint testimony from the maintenance man, and his summation dwelling on the victim's inconsistent prior statements, presents a factual backdrop akin to invited error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4252-16T1